## The PROPRIETORS of the second turnpike road in New Hampshire *versus* TAYLOR.

Assumpsit lies for tolls due for passing upon a turnpike road, and the law will imply a promise to pay, notwithstanding the defendant, at the time of using the road, denied his liability, and refused payment.

A turnpike charter provided, that nothing in the act should entitle the corporation to demand toll of any person, who should be passing " with his horse or carriage, to or from public worship, or with his horse, team or cattle, or on foot, to or from any mill, or on the common and ordinary business of family concerns within the same town." An individual passing to another town, from that in which he resides, in order to purchase lumber for his own use, it not appearing that he went to a mill, is not within the exception.

ASSUMPSIT to recover certain tolls, alleged to be due from the defendant, for passing over the plaintiffs' turnpike road.

The case came before the court upon a statement of facts, by which it appeared, that the plaintiffs are duly incorporated, and organized according to the provisions of their charter, and have completed their road, the westerly end of which is within the town of Claremont, and erected a gate thereon within said town—that the defendant is, and for a long time has been, an inhabitant of said town, living easterly of said gate—that at the times when he travelled along said road, and through said gate, for which the toll is demanded, he was going to Weathersfield, in Vermont, to superintend the purchase and drawing of lumber from that place to Claremont, for his own use.

The plaintiffs' charter granted them certain tolls, but " provided that nothing in this act shall extend to entitle the said corporation to demand toll of any person, who shall be passing with his horse or carriage, to or from public worship, or with his horse, team or cattle, or on

foot, to or from any mill, or on the common and ordinary business of family concerns within the same town."

Toll was demanded of the defendant, which he refused to pay, on the ground that the corporation had no right to demand it.

*Handerson* and *Putnam*, for the plaintiffs.

The defendant claims exemption from toll by virtue of the proviso. He would construe this clause the same as if it had said, *that no person shall be liable to pay toll at any gate to be erected within the town where he resides.* This we say is not the true construction of this section. We take it to be this—a person is exempt from toll, passing over said road to or from public worship, to or from any mill, or on the common and ordinary business of family concerns *within the same town.* A person going to attend public worship, or to mill, or on his ordinary business *to another town,* is not exempt from toll. The words " within the same town" connect with, and qualify what precedes them, and such construction accords with reason and common sense. It was very proper that there should be no hindrance to one's going to mill, attending public worship, or transacting his ordinary business within his own town. But if a person has occasion to travel upon a turnpike ten miles to a neighboring town, there is no reason why he should not pay toll if a gate happens to be located on that part of the road he passes over in his own town, as well as if it should happen to be located in the adjoining town.

Where in other states questions have arisen as to the construction of similar provisions in turnpike acts, the courts have not inclined to extend the exemption from toll beyond the fair meaning of the language used. See 9 Johns. 356, *Stratton v. Herrick* ; ib. 357, *Stratton v. Hubbell* ; 7 Johns. 183, *Hearsey v. Boyd* ; 15 Johns. 510, *Bates*

v. *Sutherland* ; 2 Pick. 538, *Medford Turnpike* v. *Torrey.*

The case *Kent* v. *Newburyport Turnpike*, 4 Pick. 388, is fully and directly in point, and not to be distinguished from that under consideration.

*J. H. Hubbard* and *Kimball*, for the defendant, contended, that under the circumstances he was not liable to pay toll—and that this action could not be maintained, because the defendant having refused to pay the toll, claiming a right of free passage, no promise to pay could be implied.

*By the Court.* PARKER J. The defendant does not bring his case within the proviso in the plaintiffs' charter. He went to Weathersfield in Vermont to purchase lumber for his own use. If this might be considered as within the common and ordinary business of family concerns, (17 Johns. 33 ; 2 Vermont Rep. 512 ; 2 Pick. 533) the place to which he went to transact this business was not within the same town in which he resided, and he is not therefore entitled to exemption upon that clause of the proviso. 4 Pick. 388, *Kent* v. *Newburyport Turnpike.*

Had the case stated, that the defendant went to a mill for the purpose of purchasing the lumber, a question might have arisen, whether the words "*within the same town*," at the close of the proviso, are applicable to all the clauses of the sentence, so that to bring an individual within the exemption, the mill must be situated within the same town, or whether those words are to be applied only to that branch of the proviso, relating to the common and ordinary business of family concerns.

But as the case does not state that the defendant went to any mill, or was passing to or from one, and we cannot infer that such was the fact, that question is not presented for our decision, and upon it we give no opinion.

Nor can the objection to the form of action avail the defendant.

It is well settled that assumpsit lies for tolls. 1 N. H.

Proprietors
v.
Taylor.

Proprietors
v.
Taylor.

Rep. 20, *Chesley* v. *Smith* ; 1 D. & E. 616, *Seward* v. *Baker* ; 2 Wils. 95 *Mayor of Exeter* v. *Trimlet* ; 3 Burr. 1402, *Mayor of Yarmouth* v. *Eaton* ; 2 Green. 404, *Bear Camp River Company* v. *Woodman* ; 17 Johns. 33, *Newburgh Turnpike* v. *Belknap* ; 2 Pick. 538, *Medford Turnpike* v. *Torrey.*

There was in this case no express promise to pay, but the law implies the promise, and the implication is founded upon the defendant's own act.

Nor can his refusal to pay alter the case. This is no more than saying that he was under no legal obligation to pay, and does not prevent the implication of a promise, it being found that he is legally liable to pay toll.

If the right to receive tolls, and the duty to pay, had been defeated, or had never arisen, by reason of this refusal, then a promise to pay could not be implied against the express dissent of the defendant. But such is not the fact.

The right to receive the tolls arises from the use of the road by the defendant. 3 Barn. & Adolph. 411, *Mayor, &c. of Newport* v. *Saunders.* And the duty to pay is not the less imperative because the defendant himself supposed he was not liable, and refused to pay. 1 Camp. 222, *Morris* v. *Burdett.*

The implied promise arises from this right of the plaintiffs, and the duty and liability of the defendant, consequent upon his use of the road, and is not dependent upon his denial or admission of the obligation.

An individual purchasing merchandize could, surely, not defend against an action of assumpsit for the price, by showing that upon payment being requested, when the merchandize was delivered to him, he refused to pay.

This case may be distinguished from *Whiting* v. *Sullivan,* 7 Mass. 107. There the defendant sent a horse to the plaintiff, not as his own, but as the horse of the plaintiff. The plaintiff was not authorised to receive and

keep him as the horse of the defendant, against his express declaration to the contrary, and it was held that no promise could be inferred. In other words a right to receive, and a duty to pay, did not arise upon those facts. But here is both, notwithstanding the refusal of the defendant.

Proprietors<br>v.<br>Taylor.

*Judgment for the plaintiffs.*