PENOBSCOT RAILROAD COMPANY *vs.* GIDEON MAYO.

Penobscot. Decided January 21, 1878.

*Limitations, statute of.*

The defendant procured the surrender of his note by fraud without payment.

*Held*, 1. The plaintiff can maintain an action of tort for the fraud, and the statute of limitations commences to run from the discovery of the fraud or the time when the plaintiff may discover it in the use of due diligence.

2. If the defendant by the fraud, procured money or its equivalent, the plaintiff may waive the tort and maintain an action for money had and received, and the same rule of limitation applies that is applicable to an action of tort.

3. Procuring the surrender of his note for money then overdue without payment was procuring the equivalent of money.

ON EXCEPTIONS.

ASSUMPSIT. The writ was dated January 3, 1870, and contained three counts stated in 60 Maine, 306. A statement of the case is also given with the findings of the referee in 65 Maine, 566. The case was recommitted to the referee, who reported certain facts and rulings at the January term, 1877, and closed his report and award as follows :

" Upon the foregoing facts and findings I rule

" 1. That upon the first count in this writ, being on the account annexed for $40,400, the plaintiffs are not entitled to recover ; and this ruling I make upon the authority of the opinion of the court in this case contained in the 60th volume of the Maine Reports.

" 2. That on the third count in the writ, being the direct count on the $4000 note, the plaintiffs are not entitled to recover, for the reason that the recovery thereon is barred by the statute of limitations ; and this ruling I render upon the authority of the opinion of the court in this case contained in the 65th volume of Maine Reports.

" 3. The second count in the writ is for money had and received, with the specification, in substance, that plaintiffs would prove under it the procuring of said $4000 note July 13, 1864, by defendant, by his false representations that he had received no consideration or payment for the bonds for which he had given said note.

" And it remains only to determine whether this count is to be regarded as a count upon the note itself, which would be barred by the statute of limitations, or as such a count as can bring the case within R. S., c. 81, § 92, and would not be so barred.

" Upon this point (as matter of law) I rule that this count is not such as can bring the case within said provision of R. S., but that it is in substance a count upon the note itself and is therefore barred by the statute of limitations.

" I do therefore make this my final award and determination in the premises, that the said defendant recover of said plaintiffs the costs of reference, taxed at fifty dollars, together with the costs of court, to be taxed by the court.

" (Signed) S. F. Humphrey, Referee."

The plaintiff in interest, N. Wilson, filed objections to the acceptance of the report and to the rulings of the referee in matters of law, and particularly to the third ruling in substance that, although he had found concealment and fraud and that the facts had not come to the knowledge of the plaintiffs prior to January 7, 1868, yet he had found that the action, commenced January 3, 1870, was barred by the statute of limitations; that in an action for money had and received by a payee against the maker of a note who procures it to be given up to him through fraud without payment, the statute of limitations begins to run at the maturity of the note, as in account on the note itself, though the fraud was not discovered till long afterwards.

The presiding justice, *pro forma*, overruled the objections and accepted the report and award of the referee; and the plaintiffs alleged exceptions.

*A. Sanborn*, with *N. Wilson*, for the plaintiffs.

*C. P. Stetson*, for the defendant.

I submit this case on the authority of 60 Maine, 306, and 65 Maine, 566. It has been very fully argued and carefully considered in these two cases, and further comments are unnecessary. "*Interest reipublicæ ut sit finis litium.*"

LIBBEY, J. This action is brought by N. Wilson, in the name of the plaintiff, as assignee or pledgee of the claim in suit. It

has twice before been before this court. *Penobscot Railroad* v. *Mayo*, 60 Maine, 306. *Same* v. *Same*, 65 Maine, 566. By the exceptions either party may refer to the former reports. The nominal plaintiff has no interest in the subject matter of the suit. So far as it had any interest it has been discharged. *Penobscot Railroad* v. *Mayo*, 60 Maine, 306, *supra*. The suit is prosecuted for the benefit of Wilson only. The writ contains three counts. 1. On an account annexed. 2. Money had and received. 3. On a promissory note for $4000 given by defendant to plaintiff. dated May 28, 1862, payable in one year with interest. The action was commenced January 3, 1870. Defendant pleaded and relies upon the statute of limitations. The case was referred under a rule of court on legal principles, the referee to report any facts and questions of law that either party might desire with right of exceptions. So far as is material for the consideration of the questions involved, the following facts appear from the reports of the referee: On the 28th of May, 1862, the plaintiff sold to the defendant $68,700 of its bonds for $4000, the defendant giving his note therefor, payable in one year with interest. The plaintiff corporation by vote of the same date, pledged the note to the directors as security for the several amounts by them advanced to the company and then due them, and when collected to be divided among them in proportion to the sum actually due to each. When the defendant gave the note it was verbally agreed between the parties that if he did not sell the bonds or receive any compensation for them, his note should be canceled and given up to him without pay. On the 13th of July, 1864, the defendant falsely and fraudulently represented to the directors of the plaintiff corporation that he had turned over the bonds to the European and North American Railway Co., which had become the purchaser of all the property of the plaintiff, without pay or compensation therefor, suppressing the fact that he had previously sold the bonds and received therefor $22,900 in the bonds of the European and North American Railway Co., and thereby procured the surrender of his note without payment. The fraud was concealed by the defendant and did not come to the knowledge of the plaintiff till January 7, 1868. The account annexed to the

writ contains the following item: "1864, July 13: To your note of $4000, on interest from May 28, 1862, given up by reason of your false representation that you had surrendered the bonds for which it was given without consideration or payment, and it was therefore to be given up and canceled, whereas you had sold and received pay for said bonds in October, 1863, long prior to getting it up, $6,400." In the writ the plaintiff specified that, under the second count, it will prove "the account annexed and that the money was received by the defendant to the use of the plaintiff." Upon these facts the referee finds, as matter of law, that the action can only be maintained on the note declared on in the third count, and that the action is barred by the statute of limitations. If the first finding is correct, it follows that the action is barred. This court so held in 65 Maine, 566, *supra*. That decision is invoked by the counsel for the defendant as decisive of the case as now presented. We think it is not.

Undoubtedly the plaintiff can maintain an action for the fraud of the defendant in procuring the surrender of the note without payment. It might maintain an action of case for the fraud, or of trover for the note. In either case the statute of limitations would commence to run from the time the fraud was discovered, or might have been discovered in the use of due diligence by the plaintiff. And if by the fraud the defendant procured money, or its equivalent, the tort may be waived by the plaintiff, and assumpsit for money had and received maintained.

Did the defendant by procuring the surrender of his own note then overdue without payment receive the equivalent of money?

It has been repeatedly held that where a debtor procures a discharge of his debt by payment, in whole or in part, in counterfeit money, an action for money had and received may be maintained for the amount of the payment thus made, the plaintiff first tendering back the counterfeit money received. So an agent who discharges a debt due to his principal by taking a note payable to himself, may be held for money had and received, though the note is unpaid. *Floyd* v. *Day*, 3 Mass. 403. *Hemenway* v. *Bradford*, 14 Mass. 121. *Hemenway* v. *Hemenway*, 5 Pick. 389. *Fairbanks* v. *Blackington*, 9 Pick. 93.

There is stronger reason for holding one who has procured the surrender of his own note, for money had and received, than where he has received the note of another. So where the defendants procured the plaintiffs, who were agents of the defendants' creditors, to procure the discharge of their debt, and the plaintiffs did so by giving their principals credit therefor, and charged the amount to the defendants, it was held equivalent to the payment of money by the plaintiffs, and the receipt of money by the defendants, and an action for money paid or money had and received might be maintained. *Emerson* v. *Baylies,* 19 Pick. 55.

In *Perry* v. *Swasey,* 12 Cush. 36, the maker of a note released to a third person a claim against him to an amount equal to the note, upon the promise of such third person to pay and take up the note. In discussing the question whether the holder of the note could maintain an action for money had and received against such third person, Shaw, C. J., in delivering the opinion of the court says: "We are strongly inclined to the opinion that the plaintiff is entitled to recover on the money counts, as for money had and received. *Hall* v. *Marston,* 17 Mass. 575. Mrs. Harvey placed money in the hands of the defendant for the use of the plaintiff. . . . . The discharge of a debt due in money is, for many purposes, equivalent to a payment in cash. One who has collected the debt of another, by taking a note in his own name, is liable as for money had and received."

In *Stuart* v. *Sears,* 119 Mass. 143, the plaintiff was induced to allow the defendant in part payment of the sum due from him, a credit of $1000 in the settlement of their accounts, by the presentation by defendant of a false voucher therefor. It was held that the plaintiff might recover the $1000 under a count for money had and received, the court treating the allowance of the credit by plaintiff as money paid by him and received by the defendant. See *Ames* v. *York National Bank,* 103 Mass. 326. *Baxter* v. *Paine,* 16 Gray, 273.

In *Hall* v. *Huckins,* 41 Maine, 574, the defendant was indebted to the States of Maine and Massachusetts for the stumpage of certain timber. He claimed that the plaintiffs should pay him the amount, and in a settlement with them charged them the amount

claimed, and gave them an agreement to account to and allow them any and all deductions which he might obtain in settlement with those states. He obtained a certain deduction by Massachusetts. In discussing the question whether the plaintiffs could recover under the count for money had and received, Appleton, J., in delivering the opinion of the court, says: "To enable the plaintiff to recover under the money counts, it has not been held necessary in all cases to show that money has actually been received. If anything has been received in lieu of money, it equally entitles the plaintiff to recover," citing several authorities. In applying the rule to the case then under consideration he says: "Whatever reduction might be obtained would be for the eventual benefit of the plaintiffs. Had the stumpage been paid to the commonwealth of Massachusetts, the reduction would have been by repayment to the defendant of the amount discounted. Whether the reduction were made by passing a specified sum to the credit of the defendant, or whether the stumpage, having been paid, the amount discounted were repaid to the defendant, would make no difference to him nor to the plaintiffs who were to have the benefit of whatever allowance might be made." In this case the defendant had received no money, but the court held that the reduction by Massachusetts from the amount due from him was equivalent to money, and sufficient to maintain the action for money had and received.

After a careful consideration of the question, we feel clear, both on principle and authority, that fraudulently procuring the surrender and cancellation of the note by the defendant, without payment, was equivalent to the receipt by him of the money due upon it. The note was for money. It was overdue. If the defendant had paid it, and then by the same fraud had procured the money to be paid back, there could be no question. But to both parties it would be substantially the same as procuring the note.

The action is maintainable under the count for money had and received for fraudulently obtaining the note without payment, and the same rule of limitation applies that is applicable to an action for the fraud. Upon the report of the referee the plaintiff

is entitled to recover the sum of $4,260.50 and interest from August 26, 1873.

*Exceptions sustained.*
*Report recommitted.*

APPLETON, C. J., DICKERSON, DANFORTH and VIRGIN, JJ., concurred.

PETERS, J., having been of counsel, did not sit.