CHARLES S. DEAKE, appellant from decree of Judge of Probate.

Cumberland.    Opinion January 17, 1888.

*Will, fraudulent concealment of; probate of. Statute of limitations. R. S., c. 64, § 1. Stat. 1887, c. 108.*

A pending case is not affected by statute, 1887, c. 108, which provides that where an original will is produced for probate, the time during which it has been lost, suppressed, concealed or carried out of the state, shall not be taken as part of the limitation provided in R. S., c. 64, § 1.

When a will has been fraudulently concealed by any person interested in its non-production, the statute bar of twenty years provided in R. S., c. 64, § 1, does not begin to run until the will is discovered.

ON report.

The case is stated in the opinion.

*Nathan and Henry B. Cleaves*, for appellant.

No attestation clause to a will is required by law. 1 Jarman, Wills, (5 Am. ed.) 218; *Fry's Will*, 2 R. I. 88; *Osborn* v. *Cook*, 11 Cush. 532; *Ela* v. *Edwards*, 16 Gray, 91; *Eliot* v. *Eliot*, 10 Allen, 357; *Moore* v. *Griswold*, 5 N. Y. Surrogate Rep. 388; *Roberts* v. *Phillips*, El. & Bl. 450.

Statute of limitation affects remedy only. *Bulger* v. *Roche*, 11 Pick. 38; *Lincoln* v. *Battelle*, 6 Wend. 485.

Remedy may be changed by legislature so as to affect pending cases. *Thayer* v. *Seavey*, 11 Maine, 284; *Oriental Bank* v. *Freese*, 18 Maine, 109; *Read* v. *Frankfort Bank*, 23 Maine, 318; *Sampson* v. *Sampson*, 63 Maine, 329; *Wright* v. *Oakley*, 5 Met. 410; *Dean* v. *Dean*, 2 Mass. 150; *Springfield* v. *Hampden Coms.* 6 Pick. 501; Sedgwick, Stat. & Cons. Law, 412; *Sampeyreac* v. *U. S.* 7 Pet. 222; *Foster* v. *Essex Bank*, 16 Mass. 273.

Will fraudulently concealed. Redf. Wills, Part 2, p. 9; R. S., c. 81, § 96; 1 Jarman, Wills, 53; *Shumway* v. *Holbrook*, 1 Pick. 117; *Lyman* v. *Gedney*, 55 Am. R. 871; R. S., c. 1, § 5, does not apply. *Webster* v. *Co. Com.* 64 Maine, 434; *Belfast* v. *Fogler*, 71 Maine, 404.

*Mattocks, Coombs and Neal,* for Warren Hayford and al., named as executors of will, and for John F. Colby, special administrator of the estate of George Deake.

Stat. 1887, c. 108, cannot affect the case at bar. It is a settled rule in construing statutes that they are to be considered as prospective only, unless the intention of the legislature to give them a retrospective operation is clearly expressed, or it is a necessary construction. *Hastings* v. *Lane and al.* 15 Maine, 134; *Rogers* v. *Inhabitants of Greenbush*, 58 Maine, 395.; *Given* v. *Marr*, 27 Maine, 212.

"A retrospective operation should never be given, when not required by express command or necessary implication." *Murray* v. *Gibson*, 15 Howard, 421; *Harvey* v. *Tyler*, 2 Wallace, 329; *Chew Heong* v. *United States*, 112 U. S. 536.

"We never hold an act to be retrospective unless it is plain that no other construction can be fairly given." *Rogers* v. *Greenbush*, 58 Maine, 397.

In analogous cases it has been held that similar statutes did not apply to cases where, as in the case at bar, the proceedings were barred by the statute of limitations that was in force before the amendment went into operation. So held in case of an amendment that the time of residence of a defendant out of the state should not constitute a part of the time limited for commencement of action. *Wright* v. *Oakley and al.* 5 Met. 400.

Also by statute giving a remedy by bill in equity in certain cases to those holding claims against estates of deceased persons not prosecuted within the time limited therefor. *Garfield* v. *Bemis*, 2 Allen, 445.

Also as to a statute extending the time for filing a petition; it was held that such a statute would not revive a right of action by petition for land damages, barred by the statutes of limitations in force when the amendment was adopted. *Kinsman* v. *Cambridge*, 121 Mass. 558.

This original will is not proved to have been lost, destroyed, suppressed, or carried out of the state, so that it could not be obtained after reasonable diligence.

1. It was not lost, but was in the possession of George Deake

when found by Mrs. Brown, one of the appellants in this case, and has been in the possession of the latter since.

2. It was not destroyed, but is in existence to-day.

3. No evidence shows that it was ever suppressed, so that it could not be obtained by reasonable diligence.

Mrs. Brown found it in the house of George Deake in 1873; no attempt had been made at concealment; it could have been found at any time, by reasonable diligence. It was actually in the possession of Mrs. Brown after 1873, and the twenty years' limitation did not expire until August, 1874; her own want of diligence in presenting the will, defeats the application of Ch. 108 of the Public Laws of 1887, which is not intended to give relief against want of diligence of a petitioner in such cases.

Any alleged proof of a suppression of this will is inferential merely and attacks the good fame of both Charles Deake, the father, and George Deake, the uncle, of these petitioners. It is a far more probable and honorable inference that the will was revoked by the alleged testator. The conduct of both Charles and George Deake was inconsistent with improper motives. The property remains to-day as it was at the demise of Benjamin Deake.

VIRGIN, J. This is an appeal from a decree of the judge of probate disallowing the proposed will of Benjamin Deake, late of Cape Elizabeth, deceased.

The report discloses the following, among other facts:

The testator resided for many years in this county and died here August 7, 1854, leaving real estate in Boston, real and personal estate in this county, and two sons, George and Charles Deake, his only heirs at law.

On November 21, 1854, no will having been produced or suggested, Charles Deake was appointed administrator on his father's estate.

Several years prior to 1873, Charles resided with his brother, George, in Boston, and died there in December of that year, leaving one son (appellant) and two daughters, his only heirs at law.

George Deake died in Boston in 1885, leaving a widow, but no children.

Some months after Charles's decease in December, 1873, his daughter, (Mrs. Brown) then about twenty years of age, while looking over some old letters and other papers at her uncle George's, took among others what now purports to be a holographic will of her grandfather, (Benjamin Deake) the purport of which she did not then know, having incidentally taken it with the others out of mere curiosity, as specimens of his handwriting and signature; tied them together and carried them to New York, where she then resided, and never saw them afterward until found there by her brother, (appellant) who, after the decease of his uncle George in 1885, having learned then for the first time, in an interview with the latter's widow, that the will was made, and having thereupon sought for it in vain among his uncle George's papers, finally found it in the bundle of papers in New York, where Mrs. Brown unwittingly left it.

The will is quite lengthy, untechnically drawn, and phonetical in its orthography; but the intention of the testator is not left in doubt.

The only attestation clause preceding the signatures of the witnesses, is simply the word "witness." But as the statute (R. S., c. 74, § 1) simply requires a will to be "subscribed in his (testator's) presence by three credible attesting witnesses," no *testimonium* clause is necessary. 1 Redf. Wills, 231, and cases in note. The statute does not require the testator to sign in the presence of the witnesses, but does require them to subscribe in his presence, in order that he may identify the instrument which they subscribe as his will. *Dewey* v. *Dewey*, 1 Met. 349; 2 Greenl. Ev. § 678. They need not subscribe at the same time or in the presence of each other. *Ib.* They need not see him sign, his acknowledgment of his signature to each separately by word or act, accompanied with a request for them to attest as witnesses, is clearly sufficient. *Stonehouse* v. *Evelyn*, 3 P. Wms. 254; *Hogan* v. *Grosvenor*, 10 Met. 56; *White* v. *Trs. Brit. Museum*, 6 Bing. 310. They need not know that the instrument subscribed by them is a will; for the fact that it is in

his own handwriting is sufficient evidence that the testator knew its contents and intended it to be his will. *Osborn* v. *Cook*, 11 Cush. 532 ; *Ela* v. *Edwards*, 16 Gray, 91, and cases there cited. Moreover, when, as in this case, all the witnesses are dead, it is well settled that proof of the genuineness of the signatures of the testator and of the witnesses, is *prima facie* proof that all the requisites of the statute have been complied with, especially when, as in the case in hand, the witnesses were men of character, and friends and neighbors of the testator. *Hand* v. *James*, 2 Com. 531 ; *Crost* v. *Pawlet*, 2 Stra. 1109 ; *Nickerson* v. *Buck*, 12 Cush. 332 ; *Ela* v. *Edwards*, *supra*. The will is proved to be in the handwriting of the testator, the signatures of the testator and of the respective witnesses are amply established as genuine ; and in the absence of any suggestion to the contrary, we consider the due execution of the will established.

The principal objection interposed to the probate of the will, proposed for the first time in November, 1885, thirty-one years after the decease of the testator, is based on R. S., c. 64, § 1, which, so far as applicable to this will, provides : "After twenty years from the death of any person, no probate of his will shall be originally granted." This bar is sought to be avoided under an exception thereto found in St. 1887, c. 108, which provides : "When an original last will is produced for probate, the time during which it has been, lost, suppressed, concealed or carried out of the state, shall not be taken as part of the limitation provided in the first section." We are of opinion, however, that the provisions of that new statute cannot affect this case.

This report was made up at the April term, 1886, of the supreme court of probate, was entered at the succeeding July law term, when it was set down to be argued by both parties within ninety days ; but the arguments were not filed until June, 1887. In the meantime the new statute was enacted and did not take effect until April 16, 1887, nearly one year after the case was set down for argument. So that the twenty years' bar had expired thirteen years before the new statute became effective.

Now passing by the question whether the legislature had authority to revive the right of probating a will after it had become

fully barred by the express provisions of the statute, (*Atkinson* v. *Dunlap*, 50 Maine, 111, Wood Lim. 32) we are of opinion that a fair construction of the new statute will not allow it to affect this case.   For it is one of the settled rules of the interpretation of statutes, (though like all others subject to exceptions) that they shall always have a prospective operation unless the intention of the legislature is clearly expressed or clearly to be implied from their provisions, that they shall apply to past transactions.   *Bryant* v. *Merrill*, 55 Maine, 515.   We may well adopt the language of KENT, J., who, in speaking for the court in relation to another statute passed during the pendency of an action, said :  "There is no language in the new statute which indicates any intention of the legislature to make it retrospective, or to interfere with actions pending.   We never hold an act to be retrospective unless it is plain that no other construction can fairly be given."  *Rogers* v. *Greenbush*, 58  Maine, 397 ;  see  also *Garfield* v. *Bemis*, 2 Allen, 445 ; *Kinsman* v. *Cambridge*, 121 Mass. 558 ; *Harvey* v. *Tyler*, 2 Wall, 329 ; 1 Kent's Com. * 455 ; *Dash* v. *Van Kleeck*, 7 Johns. 477 ; Smith's Cons. & St. L. § 172.

But it does not necessarily follow, that because more than twenty years have elapsed since the death of the testator, his will may not now be admitted to probate.   For fraudulent concealment of a cause of action has long been considered a good replication to a statute bar, in actions at law as well as in suits in equity, (2 Sto. Eq. § 1521 ; *Sherwood* v. *Sutton*, 5 Mason, 143, 145, and cases ; Wood Lim. § 275 ; Ang. Lim. ch. 18, § 4, *et seq.*) though judges have not always agreed respecting the grounds for the rule.

This question became *res judicata* in this state long before the separation.   *First Mass. Turnp. Corp.* v. *Field*, 3 Mass. 201. The defendant in that case contracted to construct a turnpike for the plaintiff; did some of the work deceitfully, covered it with earth, but represented it completed and received his pay therefor. The defect having been discovered after six years, it was held, in an action for damages for the defective work, that the statute of limitations did not bar the action.   PARSONS, C. J., said :

" If the knowledge of the defective work was fraudulently concealed from the plaintiff by the defendant, we should violate a sound rule of law if we permitted the defendant to avail himself of his own fraud."

This principle has been followed, approved and recognized in numerous cases, among which are : *Homer* v. *Fish*, 1 Pick. 435 ; *Welles* v. *Fish*, 3 Pick. 74 ; *Bishop* v. *Little*, 3 Maine, 406 ; *Cole* v. *McGlathry*, 9 Maine, 131 ; *Farnam* v. *Brooks*, 9 Pick. 212, 244 ; *Nudd* v. *Hamblin*, 8 Allen, 130 ; *Atlantic Bank* v. *Harris*, 118 Mass. 147, 153 ; *Carr* v. *Hilton*, 1 Curt. 230, 237–8 ; *Bailey* v. *Glover*, 21 Wall. 342, 348.

After the decision in *Turnpike* v. *Field*, *sup.* the legislature of Massachusetts enacted a statute of the same purport, which, in 1841, was followed by the legislature in this state, making it applicable only to the specific actions therein enumerated. R. S., 1841, c. 146 ; R. S., c. 81, § 96. This statute is merely declaratory of the common law, so far as it goes, and finds many illustrations in the cases cited on the margin of the section in the revision.

But to bring a case within the rule, actual fraud and concealment must be shown, ( *Cole* v. *McGlathry*, 9 Maine, 131 ; *Nudd* v. *Hamblin*, *supra*) unless the fraud itself was *per se* concealment. *Gerry* v. *Dunham*, 57 Maine, 334. And if the plaintiff had ample means, in the exercise of ordinary diligence, to detect the fraud, he is chargeable with knowledge of it. *McKown* v. *Whitmore*, 31 Maine, 448 ; *Rouse* v. *Southard*, 39 Maine, 404 ; *Farnam* v. *Brooks*, 9 Pick. 212 ; *Wells* v. *Child*, 12 Allen, 333, 335, or, in the language of Mr. Justice MILLER, "when the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or effort on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey* v. *Glover*, 21 Wall. 348, and cases. Which proposition was reaffirmed in *Traer* v. *Clews*, 115 U. S. 537–8.

This being the rule governing matters in law and in equity, we

perceive no reason why it should not, but many reasons why it should also apply to wills fraudulently concealed.

Whether the facts in the present report are sufficient to bring the case within the rule, we need not now inquire; for this question was not raised in the probate court or made a reason for the appeal, and hence the appellees have had neither occasion nor opportunity to meet it. But the facts apparent on the face of the report, such as the finding of the will among the papers of persons interested in its non production; their duty under penalty of imprisonment to deliver it to the propate court (R. S., 1857, c. 63, § 1); its non delivery and the consequent deprivation of the appellant's property rights, especially when connected with the fact that the real property in Portland at least still remains in the family, as it did at the decease of the testator, all compel in us the belief that " law and justice require " us, under the authority conferred by R. S., c. 63, § 28, to remand the case to the probate court for the trial of the question whether or not the will in question was fraudulently concealed, where the parties can both be fully heard on such evidence as they may adduce.

If that question is determined in behalf of the appellant, the rights of all parties may be protected thereafter. 2 Redf. Wills, 8, and note; *Rebhan* v. *Mueller*, 114 Ill. 343; S. C. 55 Am. R. 869.

> *Case remanded to probate court for the purpose mentioned above, and for further proceedings.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.